We'll hear argument next in number 2011-1610, In Re O'Donnell, but before we get going, let's allow counsel the opportunity to pick up their things. There's a lot of materials to be gathered and so forth. All right, I think we're ready. Mr. Stegall. In the face of this stampede for hard-stopping republication, Mike O'Donnell had a startlingly different idea. Rather than technical wizardry to stop the unlawful republication, why not make the licensing of these works a far more public act by publishing the record of licensing on the internet and making it available to anybody for look-up on the internet. The publishing on the internet was prior art, correct? The only thing that's new here is the making available to everyone. Of the license for the republication. There was a system that kept track of these licenses for administrative purposes, but it wasn't made public on the internet. The only difference between Johnson and your invention is the public nature of the availability, correct? Yes. This was a very different approach. Moving to the legal aspect of the case, I recently told my son to clean up his room. He came back a little while later, did not appear to have done it. I said, well, why not? He said, oh, I did clean up my room. I moved one article of clothing from the floor to the chest of drawers. You didn't say to what extent I had to do it. And that's one way of defeating a burdensome mandate is to interpret it in such a way that you are relieved of the burden. That's what the PTO has done in this case. The Supreme Court has stated that in order to find obviousness in the combination of existing elements, there should be an apparent reason to combine those existing elements. And the PTO has found an apparent reason in the claim language itself. Our claim reads, making the record available for lookup by anyone from any computer on the publicly accessible network. The PTO has found an obvious benefit in that in allowing more people access to the records of licensing. To me, that sounds very much like the same thing. If this is allowed to stand, every patent claim bears within its own language the seeds of its own defeat. If the PTO can just reach into that claim and take the claim language, alter it maybe slightly and say, here's an obvious benefit. Here's an apparent reason for making this combination. Just what you said in the claim. That could be done with every patent claim, virtually every patent claim ever applied for. The PTO has two paths to show obviousness. By one path, they could argue that the benefit that we have put forth in that of forestalling unlawful republication, that that benefit is obvious. They've never made arguments to that extent, to that point. They've never argued that point. Or, and we would be the first to admit this, they could come up with a different benefit and argue, well, this other benefit is obvious. I don't understand. Are you suggesting that the benefit of keeping people from infringing copyrights is not an obvious benefit? It doesn't obviously flow from making public the records of licensing. It takes a subtle understanding of the nature of the human being as a social animal to see that a more public record will make it possible for third parties to understand that what they've gotten in the mail was not a lawfully licensed republication. Other people didn't see that. And we've argued consistently from the beginning that this was a novel approach to forestalling copying that was not evident to others at the time and is not obvious. To go from making publicly available those records of licensing to, yes, this will stop people from copying, we've argued consistently that that is a non-obvious step. It requires a subtle and deeper understanding of the problem of unlawful republication of copyrighted works. And the PTO has never made an argument against that. Moving to predictable results. The PTO has stated that our claim has a predictable result, but so does every combination ever made. There are always many trivial predictable results. In a complex piece of machinery, the end result that the machinery is designed for might have been unpredictable. But the fact that, for example, if you move element A, that moves element B, that's a trivial predictable result. And there's always many trivial predictable results. If a trivial predictable result will do, virtually nothing is patentable. And that's why, fortunately, having a predictable result is not the legal standard for obviousness. The question is, is there more than a predictable result? Do you agree that Johnson teaches that right holders and potential licensees have access to the records in Johnson? That's what the PTO made a fact-finding set of that. Not the records of licensing. Not the records of licensing. Those are kept just for the administrators in Johnson. There are records. I'm reading from the board's opinion at page 7. The appellants allege that Johnson teaches only administrators have access to the records. We find, to the contrary, that Johnson teaches that rights holders and potential licensees also have access to the records. They cite column 3, lines 48 to 55. So it seems that they rejected, as a matter of fact, this argument that you're putting forth. Just a moment. I'm sorry, which page was that? Page 7 of the board opinion. And it says ADD.8, so I don't know if it's page 7 or page 8. It looks like page 7. The appellants have not directed me. Oh, I see. So I guess what I'm wondering is, if I accept the PTO's fact-finding that Johnson teaches access to the records not only by administrators, but also the rights holders and potential licensees, how non-obvious is it to really say, now let's open it up to everybody who might otherwise infringe the copyright? Well, it makes a huge difference, because now... Potential licensees is a pretty broad category, and in theory that would be people who want to use the copyright, right? Yes. Let me find that... You want the section of the prior patent? Of the patent, yes. Yes, it's A116, column 3, lines 47 through 58. I think that's what the board was citing. Certainly. I believe that's the... The citation. Well, it says that the system may permit potential licensees to obtain or be denied authorizations. They can ask for an authorization to license. But that doesn't mean that the third party could get on there and check out somebody else's license. They have some access to the records, but it's a very different access that would not permit third parties to act as public enforcers of the copyright holder's set of rights. It would only mean logging on saying, can I have a patent, can I have a license, pardon me, and being told either, well, yes, you can here the terms are... No, you can't. Okay, forgive me, I don't remember, does your brief argue that this fact... So the fact... You made a fact finding to the contrary. Does your brief argue that that fact finding was not supported by substantial evidence or otherwise wrong? Because I may agree with you. What you're saying seems to read more consistently with what prior art says, but there is a fact finding here. If you didn't appeal it, I would accept it. But it's an unclear fact finding, because it just says the records. It doesn't specify what records, and it doesn't specify to what extent. And there's never been a question in this case that Johnson doesn't permit third parties to log on and inspect their record of licenses. It's just unclear when they say that potential licensees also have access to the records. They do, in a sense, by being able to determine if they can license or not, whether a license is available. They do have some access to the records. So if we didn't contradict that point, it's just because the point wasn't clear to begin with, and never said that third parties could log on and inspect the records of licenses themselves. And in the context of the previous argument and follow-up argument, it's very clear. They never made the argument that third parties could log on and take a look at the records of licenses. You are well into your bottle time. Would you like to save the rest of it? Yes. May it please the court. Here the board did not rely on mere conclusory generalizations. The board found a rational explanation as to why this invention is obvious. First the board looked at the objective reach of the claim. The objective reach of the claim, the only difference between this claimed invention and the prior art, is that the claimed invention allows anyone access, whereas Johnson teaches that certain people have access to records of license agreements. What the board found is that in order, a person of skill, it was well within the skill of an ordinary artisan to provide anyone access to these records. Because it's a matter of just changing the discipline. It's well within the skill, but was it obvious to do this? Was it obvious? I mean, their motivation to do it, as I understand it, was to prevent copyright infringement more broadly. Is it obvious that allowing access to licenses would necessarily do that? If it's well within the skill of an artisan, Your Honor, then it's a good reason for that artisan to choose. That doesn't make any sense. There's a million things I could make, right? Give me a piece of wood and a wood shopper could make it into any number of forms. Well, it's well within their skill to make it into a chair or a stool or anything else. It's not complicated. It's the idea that is complicated. Coming up with the design, not building it, is complicated. So it's well within the skill of an ordinary artisan, of course, to open up the system to allow more people access to it, but would they have the idea to do it? Where does that obviousness come from? Here, Your Honor, the only difference here is the fact that the claimed invention requires anyone to have access. When that difference is so minor, you have to have more than just the idea. You have to show that that minor difference produces some sort of unexpected result or that the industry taught away from it or that there was no reasonable expectation of success. We don't have any of that here. There's no evidence here of any of that to support that finding of non-obviousness. In terms of coming up with the idea, the board... Well, I would suggest that it's the onus is on them to come up and rebut that a primary patient case isn't made if the reference doesn't disclose all the elements and you can't point to anything else that does. I'm just wondering, you filled in with general knowledge, right? There isn't a reference. This isn't a combination of references, rejection. It's not a combination, Your Honor. You filled in with sort of the general knowledge of... Of a person of skill in the art. A person of skill in the art is relying... The examiner found that a person of skill in the art is relying on their expertise to know that this modification would have been easily made and that is a sufficient rationale under... Again, that's the technicality. Yes, the modification would have been easily made, just like taking one leg off of a chair and making it a stool is a modification that any woodworker could easily achieve, but it's the idea of doing it that is what your opposing counsel claims is the non-obviousness part. Well, then that idea has to result in something unexpected. Why does that result in something unexpected? What evidence is there? What evidence did the PTO proffer to suggest that it would be expected that opening up access to copyright licenses by everyone would discourage copyright infringement? The PTO found that one of skill in the art would appreciate that allowing anyone access to the records of license agreements would potentially encourage licensing, and when you encourage licensing, you would also discourage... Where are the effects on these boards? The boards on page 6... Page 6 of the board or page 6 of the... So on A6 of the record? A6. A6 of the record. The board specifically adopted the examiner's fact findings in the answer from pages 5 to 8. Page 8 of the examiner's answer... Where would I find that? Page 8 of the examiner's answer is A85. In the last full paragraph, the examiner made a fact finding. The examiner said, it would have been obvious to one of ordinary skill in the art at the time of the invention to include low security settings allowing anyone to access the records concerning license agreements in order to more efficiently reduce the illegal use and distribution of copyrighted works by allowing a member of the public to have enough information to verify whether a work is licensed or not. So the examiner found the exact same motivation here. The board relied on this motivation. This wasn't the first time the examiner cited this particular reason to make the modification. The examiner from the get-go, from the first non-final office action when this particular claim was introduced, had the same exact quote in that non-final office action. It was in the final rejection here in the examiner's answer and the board adopted that finding. Here, Your Honor, there's really no difference. It's almost very close to a 102 rejection. It actually was a 102 rejection until the point where Mr. O'Donnell amended the claim to include the term anyone. And that small change has to show, when you make that small change, you have to show something more than just a fact. You can't just make an argument that it results in something that no one ever thought of. You have to provide some sort of evidence in the form of a declaration or something else, point to something. There's nothing in this record that says that it is unexpected. On the contrary, there's evidence here from the examiner's fact finding that it is actually expected. Not only is it predictable, it is also expected. Are there any other questions? Thank you. Thank you, Ms. O'Shee. Mr. Single, you have about two minutes left. The cited paragraph is from the argument part of that examiner's brief. Yes, they state it as part of argument, but they have no basis for a finding of fact in this matter. They never stated it as a finding of fact in the proper part of the case. And they've never supported it by any sort of argument. What the PTO has done here is taken the applicant's rationale for the benefit, which we have always stated, and we've always backed up by argument, that this is not an obvious extension. They've taken our own words in the original application and in arguments, responses to office actions, and they've said, oh, well, it's obvious for the exact reason that you've said that there's a benefit, that there's a non-obvious benefit. But they've never made any argument, and they've never had a finding of fact in the factual portion of the brief to this extent, nor would they have a right to make a finding of fact without an ounce of argument to back it up, and where it is not something that the examiner would have the authority to establish as a fact. There's pretty strict limits on what the examiner can sit down and say, well, I say it's a fact, and then, unless that's disputed, it is. This was a point made in argument. It came directly from our explanation of the non-obvious benefit. It doesn't serve as a finding of fact, and they've never supported it in any way through arguments. They've never made an argument as to why this is obvious. We have argued consistently and made many arguments that it is not obvious. So it's not within the ambit of authority of the examiner to establish this just by saying it. Very well. Thank you, Mr. Siegel. The case is submitted. Thank you, Mr. Wolfe. All rise.